IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CURTIS WAYNE PEELER,

        Petitioner,

v.                                                        CIVIL ACTION NO. 1:10cv196
                                                          (Judge Keeley)

WARDEN KUMA DEBOO,

        Respondent.

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On November 16, 2010, the *pro se* petitioner, an inmate at FCI Gilmer in Glenville, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, in which he seeks an order from this court directing the Bureau of Prisons ("BOP") to reinstate good time credits that he lost as the result of a disciplinary proceeding. On November 22, 2010, the petitioner paid the required $5.00 filing fee. By Order entered November 29, 2010, the court directed the respondent to show cause why the petition should not be granted. On December 22, 2010, the respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. On December 23, 2010, a Roseboro Notice was issued. To date, the petitioner has not filed a response.

### II. FACTS

The petitioner is a federal inmate currently designated by the BOP to serve his sentence at FCI Gilmer, West Virginia. On March 11, 2010, an incident report was prepared charging the petitioner with a violation of prohibited act code 104, Possession of a weapon. (Doc. 14-1, p. 3). The

1

report indicates that on March 11, 2010, during a random search of cell E02-02, Officer Henry removed an institutional cover from the petitioner's bed. He then discovered a piece of metal, approximately six inches long that had been sharpened on both sides to create two blades that came to a point, and had been taped around the end to create a handle. (Id.) A copy of the incident report was delivered to the petitioner that same date. (Id.).

A Unit Disciplinary Committee ("UDC") hearing was conducted on March 16, 2010. At the hearing, the petitioner commented that he left for work at 6:50 a.m. and the weapon was not there when he made his bed. He further stated that he was in a six man room and that there was a lot of traffic in the room. (Doc. 14-1, p. 3). Based on the serious nature of the charges against the petitioner, the UDC referred the charges to the Disciplinary Hearing Officer ("DHO") for further hearing and recommended those sanctions deemed appropriate by the DHO. (Id.).

The petitioner was given a form Notice of Discipline Hearing before the DHO on March 16, 2010. (Doc. 14-1, p. 10). The notice advised the petitioner that he was entitled to have a full-time staff member represent him at the hearing, and he indicated that he wanted Lt. Moody to be his staff representative. (Id.). In addition the petitioner indicated that he would call inmate Pineda as a witness. (Id.).

A DHO hearing was held on April 8, 2010. At the start of the hearing, the petitioner was advised by the DHO that Lt. Moody was not available, and furthermore, because he was the investigating Lieutenant, he could not serve as his staff representative. The DHO offered the petitioner an opportunity to select another staff representative, have one appointed, or postpone the hearing to make his decision. The petitioner chose to proceed with the hearing without a staff representative. (Doc. 14-1, p.5).

At the hearing, the petitioner denied the charges, stating: "That weapon is not mine. I got up

2

at 6:55 a.m., and made my bed up, nice and neat. Someone came in the room, after I left and set me up. I did not put, or have a weapon in my bed. No I do not know who it was, and I don't have any names to give, other than my cell mate, Pineda..., he was in the cell at the time, he may have seen who did it. I don't know why anyone would do this, I don't have any problems with anyone that I know of." (Doc. 14-1, p. 5). The petitioner's cell mate, Pineda, also testified. During the DHO hearing, he stated: "That early in the morning I sleep, I heard someone come in the room, but I did not see them. I sleep with a grey knitted over my eyes, so I was not able to see the person that came in the room." (Doc. 14-1, p. 6). In addition to the testimony of the petitioner and his cell mate, the DHO also considered documentary evidence consisting of the photograph of the home made weapon, as well as the reporting officer's written statement. (Doc. 14-1, p. 6).

Based on the greater weight of the evidence, the DHO found that the petitioner committed the prohibited act of code 104, Possessing a Weapon. (Doc. (14-1, p. 7). The DHO based his findings on the reporting officer's written statement, the petitioner's testimony and that of his cell mate witness, and the photograph of the weapon. Although the DHO considered the petitioner's denial that he committed the prohibited act, the DHO found that he provided inaccurate information in order not to accept full responsibility for his actions. Additionally, the DHO noted that the inmate witness, who claimed to be in the assigned cell, was not able to give testimony that another inmate placed the homemade weapon in the petitioner's bed, nor could he provide any information about the unidentified inmate that allegedly entered the petitioner's cell after he had departed for his work assignment. Accordingly, the DHO gave more credibility to the staff member's account of the incident, as well as the submitted evidence. (Doc. 14-1, p. 7). The DHO then sanctioned the petitioner to 60 days disciplinary segregation, 27 days loss of good conduct time, and loss of visiting privileges for 365 days. (Id.).

### III. CONTENTIONS OF THE PARTIES

In the instant petition, the petitioner raises the following ground for relief: "In violation of C.F.R. § 541.10(b)(4) arbitrary and capricious or arbitrary nor § 541.10(b)(3) 'staff shall control inmate behavior in a completely impartial and consistent manner['], and B.O.P. PS 3420.09(c)(7) employees shall not participate in conduct which would lead a reasonable person to question the employee's impartiality." (Doc. 1, p. 5). In raising this ground, the undersigned believes that the petitioner is challenging the impartiality of the DHO and challenging his decision as being contrary to the greater weight of the evidence. The respondent argues that the petitioner's claim that the DHO's findings are insufficient to support the charge is without merit.

### IV. STANDARD OF REVIEW

#### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. SUMMARY JUDGEMENT

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

Prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Where, as here, a prison disciplinary hearing may result in the loss of good time credit, Wolff holds that due process requires the following:

1. giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

6

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571. The information before the Court reveals that the petitioner was provided due process as contemplated by Wolff. Moreover, the petitioner does not allege otherwise.

In this particular matter, it appears that the petitioner's sole contention is that the greater weight of the evidence support a finding that he did not commit the charged act. The petitioner notes that he had not had any serious violence in his past criminal history and none at all since he has been incarcerated. The alleged incident took place at FCI Loretto, which the petitioner maintains is a Low Security Facility. The petition maintains that he lived in a dorm setting where there are no locked doors, and the only secure areas are in the property lockers where locks are used to secure inmate property. The petitioner points out that his witness testified that he heard someone come into the room while he [the petitioner] was at work. Therefore, the petitioner argues that "greater weight should have been given to the possibility that someone other that the assigned occupants entered the room and not to a random search conducted by Senior A. Henry without any reason given as to why he decided to search the inmate's bed that particular day." (Doc. 1, p. 5) Finally, the petitioner argues that the "greatest factor to be consider[ed] is that the weapon was not in plain view and that the covers had to be removed in order to find this particular item (knife) and that SIS had no report that the in

[sic] had ever been in possession of a knife from any of his roommates or any other inmates and that no investigation was even done to support a theory that the inmate ever previously possessed a knife or threatened anyone with such contraband, usually in such cases ordinarily facts exist." (Doc. 1, p. 5).

Despite the petitioner's argument to the contrary, it is clear that the findings made by the DHO are sufficient to support the finding that the petitioner violated Prohibited Act Code 104. The Supreme Court held in <u>Superintendent, Mass. Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445, 455 (1985) that "[t]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." The Supreme Court further stated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Explaining the standard further, the Supreme Court provided, "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." <u>Id.</u> at 457.

The BOP has adopted regulations that track the procedures outlined in <u>Wolff</u>. Moreover, where there is conflicting evidence, the BOP has adopted a standard higher that required by the Supreme Court. Specifically, where there is conflicting evidence, the DHO must base the decision on the greater weight of the evidence. The greater weight of the evidence refers to the merits of the evidence, not to its quantity or to the number of witnesses testifying. <u>See</u> 28 C.F.R. § 541.15(f).

Here, the petitioner denied the charges, and accordingly, there was conflicting evidence. Therefore, the issue is whether the DHO based his decision on the greater weight of the evidence. See Von Kahl v. Brennan, 855 F.Supp. 1413 (M.D. Pa. 1994)(the applicable federal regulations for the backdrop against which inmate's claim must be analyzed.

In reaching his decision, the DHO found as follows:

> The DHO did consider your denial of committing the prohibited act, however feels you are providing the DHO with inaccurate information. The DHO feels you are providing the DHO with inaccurate information in order to not accept full responsibility for your actions. Your requested inmate witness who you both claim was in the assigned cell, was not able to give information about the unidentified inmate that allegedly entered your assigned cell, after you departed for your work assignment. The DHO gave more credibility to the staff member's account of the incident, as well as the submitted evidence,. A Henry, Senior Officer, is a trained professional ethically obligated to report the factual events of an incident. This staff member has nothing to gain by providing me with inaccurate information, whereas, you do.

(Doc. 14-1, p. 7).

It is not the prerogative of the Court to make an independent assessment of the credibility of the witnesses or weigh the evidence. Hill, supra at 455-456. Based on the findings recited above, it is clear that the DHO considered all of the evidence, and determined that the more credible evidence was that provided by the staff member. Thus, the DHO found that the greater weight of the evidence established that the petitioner had committed the prohibited act charged, and there is no basis for finding a due process violation.

## VI. RECOMMENDATION

Based on the foregoing, the undersigned recommends that respondent's Motion to Dismiss, or in the Alternative, for Summary Judgement (Doc. 13) be **GRANTED**, and the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: February 4, 2011

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE